Annabel STODDARD, Plaintiff,

v.

SCHOOL DISTRICT NO. 1, LINCOLN COUNTY, WYOMING et al., Defendants.

No. C76–83–B.

United States District Court, D. Wyoming.

March 31, 1977.

As Amended April 13, 1977.

---

Charles E. Graves and Patrick E. Hacker, of Graves & Hacker, Cheyenne, Wyo., for plaintiff.

Alfred M. Pence of Pence, Millett & MacMillan, Laramie, Wyo., and Dennis L. Sanderson, of Kemmerer, Wyo., for defendants.

## MEMORANDUM OPINION

BRIMMER, District Judge.

The defendants moved the Court that judgment be entered in favor of the defendants notwithstanding the verdict of the jury in the above-entitled case, and for a new trial in the event of denial of their Motion for Judgment Notwithstanding the Verdict. The Court heard and considered the arguments and briefs of counsel and concludes that the motion should be granted in part and denied in part.

The plaintiff, a non-tenured teacher, brought this civil rights action for damages for the termination or non-renewal of her teaching contract at Cokeville, Wyoming, in alleged violation of her First and Fourteenth Amendment rights under the U. S. Constitution and her rights under the Wyoming Constitution. A jury trial was had, which resulted in a verdict for the plaintiff of $33,000.00 compensatory damages, $5,000.00 punitive damages, and $5,800.00 attorney fees.

The jury in special interrogatories attached to its verdict found that the reasons for the non-renewal of the plaintiff's contract as an initial contract teacher employed by School District No. 1, Lincoln County, Wyoming, were reasons related to the plaintiff's physical size, to her lack of church attendance, to the location of her

trailer, and to the conduct of her personal life, and that the reasons for the non-renewal of the plaintiff's contract were not the reasons given by the defendants which were the plaintiff's alleged lack of discipline and tidiness in the classroom and her alleged inadequate teaching methods. The jury also found specifically that the defendant School Board and its trustees did not act in good faith in failing to renew the plaintiff's contract, and that the defendants Roland Johns, Joe Deromedis, and J. Dennis Dayton acted in bad faith in failing to renew the plaintiff's contract. However, the jury found that these defendants did not act maliciously.

The defendant Board of Trustees, under statutory authority, have contracted for liability insurance to pay on behalf of the school district, the board members, and employees of the district, all sums for which they, or any of them, become legally obligated to pay for a wrongful act in the discharge of their duties during the policy period. The acts of the defendants on which the verdict was based occurred during the policy period and in the discharge of the defendants' official duties.

■ There was conflicting evidence presented to the jury which, when reviewed in a light most favorable to the plaintiff is sufficient to support the verdict of the jury. This Court is not free to reweigh the evidence and set aside the jury verdict where there is contradicting evidence, *Tennant v. Peoria & P. U. R. Co.*, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944), and the Court should not grant a judgment notwithstanding the verdict unless the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict, *Cockrum v. Whitney*, 479 F.2d 84 (9th Cir. 1973). The Court therefore has a duty to follow the jury's view of the conflicting evidence presented in the case.

■ The reasons upon which the plaintiff's dismissal was found by the jury to be based were a violation of the plaintiff's constitutional rights of privacy. The right to be free from unwarranted governmental intrusions into one's privacy is a fundamental constitutional right, *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), and such right of privacy embraces the right of an individual to attend church or not, to determine his or her own physical proportions, and to determine with whom he or she will associate. The school board members, who as individuals were found by the jury not to have acted in good faith, are not immune from liability for compensatory damages because they either knew or should have known that the actions taken would violate the plaintiff's constitutional rights, and an award of compensatory damages is appropriate under the circumstances of this case, *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

■ The defendant school district asserts that it is an entity of the State of Wyoming and entitled to protection under the 11th Amendment to the U. S. Constitution. Although the defendant school district obtains more than one-fourth of its funds from the State of Wyoming, the defendant school district on balance is not entitled to an Eleventh Amendment immunity as an arm of the State of Wyoming. The Wyoming Constitution directs the State Legislature to provide for the establishment and maintenance of a complete and uniform system of public instruction (Art. 7, Section 1), and establishes perpetual public school funds derived from public land revenues, mineral royalties and other sources (Art. 7, Section 2), which are commanded to be kept inviolate (Art. 7, Section 6) and the income from which is to be used exclusively for the support of free schools in every county of the State (Art. 7, Section 7). It also provides that general supervision of the public schools is entrusted to the State Superintendent of Public Instruction (Art. 7, Section 14). Section 9–284, W.S., 1957 defines the term "political subdivision" to include school districts, at least for purposes of the State's retirement system. These are points on which the Wyoming school system differs from that of Ohio as described in *Mt. Healthy City School District Board of Education v. Doyle*, —— U.S. ——, 97 S.Ct.

568, 50 L.Ed.2d 471 (1977). However, on the other hand the defendant school board, like that of Mt. Healthy, is one of many in the State; it receives a significant amount of money from the State, but Wyoming school boards, like the board of Mt. Healthy, have the right to issue bonds and to levy taxes for the support of the school system (Sec. 21.1–26(f) and 21.1–274, W.S., 1957 as amended). It is a "body corporate" (Sec. 21.1–17, W.S., 1957), which may "sue and be sued in the name by which the district is designated" (Sec. 21.1–27, W.S., 1957). The "governing body" of the school district is its board of trustees (Sec. 21.1–27, W.S., 1957), which is locally elected. The defendant board is empowered "consistent with the laws of the state and rules and regulations of the state board" to "prescribe and enforce rules, regulations, and policies for its own government and for the government of the schools under its jurisdiction" (Sec. 21.1–26, W.S., 1957). It has the right to "acquire, hold, convey, lease, rent, and manage property, real and personal . . . in the name by which the district is designated," to "enter into agreements . . . for the performance of acts or furnishing of services or facilities by or for the school district", to "employ a superintendent of schools, teachers, principals . . . and other personnel; and determine their salaries", to "discharge any employee," and to acquire by condemnation title to real estate (Sec. 21.1–27, W.S., 1957).

Also, the defendant board of trustees has the right to "control and disburse all moneys received from any source to maintain the schools within the district" (Sec. 21.1–26(g), W.S., 1957). The Wyoming Municipal Budget Act (Sec. 9–525 to 9–540, W.S., 1957) classified school districts as a "municipality" (Sec. 9–526, W.S., 1957) and imposes upon each school district the annual task of presenting a "complete financial plan for the fiscal year", covering all income, funds and expenditures (Sec. 9–531, W.S., 1957). School districts are authorized to include a cash reserve in their budgets "to maintain the municipality upon cash operating basis and to meet unforeseeable contingencies or emergencies" (Sec. 9–535, W.S., 1957). This Court observed in *Courtney v. School District No. 1*, 371 F.Supp. 401 (D.C.Wyo.1974) that, "These new powers evidence the clear intention of making school districts more than simply an agent of the state . . ." We agree, and hold that the characteristics of Wyoming school districts demonstrate that in Wyoming "on balance . . . a local school board . . . is more like a county or city than it is like an arm of the State." *Mt. Healthy v. Doyle, supra.*

In addition, the State of Wyoming has, by statute, waived the governmental immunity defense where the school district has procured liability insurance (Sec. 21.1–45(b), W.S., 1957, as amended). It is clear from the copy of the policy submitted to the Court that liability insurance was procured.

The defendant school district and the defendant board of trustees further assert that they are not persons for the purposes of 42 U.S.C. Section 1983 actions. The jury, in its verdict, found against the "Defendant School District and Board of Trustees, and Superintendent in their official capacities," but in its answers to interrogatories found that the school district and board did not act in good faith and that Roland Johns and Joe Deromedis, board members, and J. Dennis Dayton, superintendent, acted in bad faith.

The Court has heretofore resolved this conflict in the judgment on the verdict under Rule 48(b), F.R.C.P., on the basis of the answers to special interrogatories taking precedence over the general verdict, granting judgment not only against the defendants Dayton, Deromedis, and Johns in their official capacities but also against them in their individual capacities, and also against the defendant school district and board of trustees since the jury in its verdict found against them.

Now, the issue is whether or not the jury's verdict against the defendant school district and its board of trustees can be allowed to stand against them as a "person" under 42 U.S.C. Section 1983. We have heretofore held that for Eleventh Amendment purposes, a Wyoming school district is

not the alter ego of the State of Wyoming and that under the balancing test of *Mt. Healthy v. Doyle, supra,* it was more like a municipal corporation than an arm of the state. The word "person," as used in 42 U.S.C. Section 1983 has been held not to include municipal corporation, even where state law has removed Eleventh Amendment immunity. *Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109; *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. In *Monroe v. Pape, supra,* Justice Douglas reviewed extensively the legislative history of 42 U.S.C. Section 1983 (Ku Klux Act of April 20, 1871), pointing out that Senator Sherman of Ohio proposed an amendment which would have made liable "the inhabitants of the county, city or parish" in which the acts occurred, which the Senate adopted but the House rejected, and in place of which the Conference Committee proposed to make liable "the county, city, or parish in which any of the said offenses shall be committed". This too was rejected, the representative of the House Conferees stating that liability on counties and towns must go out. Section 6 of the Act of April 20, 1971 was substituted, in which all reference to municipal liability was omitted.

Justice Rehnquist, in *Kenosha v. Bruno, supra,* observed that nothing was to be found in either the legislative history discussed in *Monroe,* or in the language actually used by Congress, to suggest that the generic word "person" in Section 1983 was intended not to include municipalities when damages were sought but to include them when equitable relief was demanded, and concluded that the Court had no jurisdiction because the suit had not been brought against a "person".

In *Adkins v. Duval County School Board,* 511 F.2d 690 (5th—CA, 1975) it was held that an analysis of the approach of the Court in *Kenosha* and *Monroe* seems to require the conclusion that a county school board is not a person subject to Section 1983 suits. Judge Arraj in *Weathers v. West Yuma County School District R–J–1,* D.C., 387 F.Supp. 552 (1974), followed the

same reasoning holding that the school district was not a "person" under Section 1983 and Section 1985. This issue was not discussed on appeal.

In 1976 thirteen of fifteen judges of the Fifth Court of Appeals in *Ingraham v. Wright,* 525 F.2d 909, held that it was "well-settled that a school board is not a 'person' and thus cannot be sued under § 1983," while finding that the superintendent was such a "person" over whom the Court had jurisdiction to proceed. In *Mims v. Board of Education of City of Chicago,* 523 F.2d 711, the Seventh Circuit Court of Appeals held that the defendant board of education was a body politic and corporate under Illinois and not a "person" under Section 1983. In view of the position herein that a Wyoming school district is more like a county or municipal entity than an arm of state, the conclusion is inescapable that the defendant school district is not a "person" over whom this Court has jurisdiction under Section 1983.

Finally, the defendants urge that the jury's finding of an absence of malice precludes the award of punitive damages and attorney fees. The jury found that the defendants Johns, Deromedis and Dayton did not act in good faith in non-renewal of plaintiff's teaching contract, but also found that they acted without malice. The jury was instructed that if the plaintiff was found to be entitled to compensatory damages, and if the jury found that the act or omission of the defendants was maliciously, or wantonly or oppressively done, punitive damages, and attorney fees, could be awarded (Federal Jury Practice and Instructions, Devitt and Blackmar, 2d Ed., Section 78.11). The jury's finding of the absence of malice, and the absence in the Court's view of any evidence of wanton or oppressive conduct by the defendants precludes the award of punitive damages and attorney fees.

It is therefore the view of this Court that the Judgment on Jury Verdict, entered herein on January 7, 1977 must be modified by dismissal of the case against the school district, as not a "person" under Section

895

1983, but permitting it to stand against board members Joe Deromedis and Roland Johns, as individuals, against J. Dennis Dayton as an individual, and against the board members not as individuals but in their official capacity, and Carwin H. Linford as superintendent in his official capacity. The award of punitive damages and attorney fees must also be stricken.

The plaintiff has also moved the Court to declare that plaintiff was denied renewal of her teaching contract for constitutionally impermissible reasons and not because of any substantial failure of plaintiff as a teacher. That conclusion seems manifest in this opinion, but it is pronounced more clearly by the jury than could any words of this Court.