Charles L. BLACKMON, Plaintiff,

v.

Caspar WEINBERGER, Secretary of
Health, Education and Welfare,
Defendant.

No. 74–320–C.

United States District Court,
E. D. Oklahoma,
Civil Division.

June 30, 1975.

Herbert E. Elias, Tulsa, Okl., Roger O. Housley, McAlester, Okl., for plaintiff.

Edwin L. Gage, Muskogee, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of the Secretary of Health, Education and Welfare denying his claim for "Black Lung" disability benefits. Plaintiff's application was made pursuant to Title IV of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 901 et seq., 30 U.S.C. § 922(b) incorporates 42 U.S.C. § 405(g).

Title IV is broken down into two subdivisions. Part B, which is involved herein, deals with claims for benefits filed on or before December 31, 1973. 30 U.S.C. § 924(a).[1] The purpose of Title IV is to provide benefits to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease or who were totally disabled by this disease at the time of their

death. 30 U.S.C. § 901. The term "pneumoconiosis" is defined as a chronic dust disease of the lung arising out of employment in the Nation's coal mines. 30 U.S.C. § 902(b). The term miner means any individual who was or is employed in the Nation's coal mines. 30 U.S.C. § 902(d). The term "total disability" has the meaning given to it by the Secretary's regulations, except that a miner shall be considered to be totally disabled when pneumoconiosis prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine in which he previously engaged with some regularity and over a substantial period of time. Also the Secretary's regulations are not to be more restrictive than those applicable under 42 U.S.C. § 423. 30 U.S.C. § 902(f).

30 U.S.C. § 921(a) requires the Secretary to make payments of benefits for miners totally disabled by pneumoconiosis. 30 U.S.C. § 921(b) requires the Secretary to promulgate regulations proscribing standards for determining whether an individual is totally disabled due to pneumoconiosis. 30 U.S.C. § 921(c) sets out certain presumptions with respect to the determination of totally disabling pneumoconiosis. These presumptions are repeated in the Secretary's regulations (20 C.F.R. §§ 410.-414(b), 410.416(a) and 410.418).

The Secretary's regulations promulgated in compliance with Title B are found in 20 C.F.R. § 410.401 et seq. These regulations insofar as they are relevant to this case are described below. Basically there are two sets of standards by which Plaintiff is entitled to establish a disability. There are permanent standards found in 20 C.F.R. § 410.412 to 410.430 and a set of alternative interim standards found in 20 C.F.R. § 410.-490.

---

1. Part B is administered by the Secretary of Health, Education and Welfare. Part C which deals with claims filed after December

31, 1973 is administered by the Secretary of Labor. See 30 U.S.C. § 902(d).

## PERMANENT STANDARDS

20 C.F.R. § 410.401(b)–(1) defines pneumoconiosis as:

"A chronic dust disease of the lung arising out of employment in the Nation's coal mines, and includes coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis, or silicotuberculosis, arising out of such employment. . . ."

Under 20 C.F.R. § 410.401(b)–(2) pneumoconiosis is also defined as:

"Any other chronic respiratory or pulmonary impairment when the conditions are met for the application of the presumption described in § 410.-414(b) . . ."

20 C.F.R. § 410.410(b) which allocates the burden of proof under Title IV reads as follows:

"To establish entitlement to benefits on the basis of a coal miner's total disability due to pneumoconiosis, a claimant must submit the evidence necessary to establish: (1) That he is a coal miner, that he is totally disabled due to pneumoconiosis, and that his pneumoconiosis arose out of employment in the Nation's coal mines; . . ."

20 C.F.R. § 410.412(a) reads as follows:

"A miner shall be considered totally disabled due to pneumoconiosis if: (1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time (that is, 'comparable and gainful work'; see §§ 410.424–410.426); and (2) His impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than 12 months."

Under 20 C.F.R. § 410.414(a) a finding of pneumoconiosis may be made under the provisions of 20 C.F.R. § 410.428 by means of (1) a chest roentgenogram (X-ray) or (2) biopsy, or (3) autopsy. 20 C.F.R. § 410.428 delineates medical standards for the determination of pneumoconiosis. 20 C.F.R. § 410.414(b) provides that in the absence of a determination of pneumoconiosis as provided in paragraph (a) of 20 C.F.R. § 410.414, if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment, it may be presumed in the absence of evidence to the contrary, that a miner is totally disabled due to pneumoconiosis. This presumption applies to miners who have worked in the Nation's coal mines for 15 or more years. However, a showing of 10 years of work and a severe lung impairment may be considered as sufficient to establish disability. 20 C.F.R. § 410.414(b).

20 C.F.R. § 410.416 deals with causation requirements. If a miner with ten or more years of coal mining experience is shown to be suffering from pneumoconiosis it will be presumed that the condition arose out of employment in the coal mines. A miner with less than ten years of experience must show a causal connection between his condition and his employment.

Under 20 C.F.R. § 410.416 there is an irrebuttable presumption of total disability to pneumoconiosis where (a) a chest X-ray yields one or more large opacities which meet certain medical specifications; (b) a biopsy or autopsy yields massive lesions in the lung; or (c) other diagnosis yields a condition which could reasonably be expected to yield the conditions described in (a) or (b) had the diagnosis been made as is therein prescribed.

If the above stated presumptions of total disability due to pneumoconiosis do not apply, a miner with pneumoconiosis may establish disability under 20 C.F.R. § 410.422. Under this section disability is determined from all the facts of the case with primary consideration given to the medical severity of the condition.

20 C.F.R. § 410.424 provides that medical considerations alone shall justify the finding of a total disability where a claimant's impairment is one which meets the duration requirements of 20 C.F.R. § 410.412(a)(2) and is listed in the appendix of the regulations. The appendix lists a number of medical specifications. However, the presumption of total disability raised by a claimant's satisfaction of one of these medical specifications may be rebutted by other evidence. An impairment which is medically equivalent to one of the listed impairments may also be taken to establish total disability under this section.

Under 20 C.F.R. § 410.426(a) pneumoconiosis which constitutes neither an impairment which is listed in the appendix to the regulations nor the medical equivalent thereof may nevertheless be found to be totally disabling if because of it a miner is not only unable to do his previous coal mine work, but also cannot, considering his age, education, and work experience engage in any other kind of comparable and gainful work available to him in the immediate area of his residence. Under 20 C.F.R. § 410.426(b), if a miner has satisfied the requirements of § 410.426(a) he may establish totally disabling pneumoconiosis on ths basis of a ventilatory study. A table of minimum values which must be met in such a study is listed. Under 20 C.F.R. § 410.426(c) a claimant who has not met the values listed in (b) may establish total disability on the basis of a physical performance test establishing a chronic respiratory or pulmonary impairment which is medically the equivalent of the values established in (b). Under 20 C.F.R. § 410.426(d) where the tests listed in the other sections of 426 are medically inadvisable or cannot be obtained, or the other tests do not establish disability, a miner may nevertheless establish a total disability through other relevant evidence.

Plaintiff is also entitled to establish his claim under 20 C.F.R. § 410.490 which sets out the aforementioned interim standards. Under this section there are two standards for establishing a presumption of totally disabling pneumoconiosis. A miner can either establish the existence of the disease under the standards set out in 20 C.F.R. § 410.428 or he can establish the disease by means of a ventilatory study if he meets certain prescribed standards. The presumption raised under this section is rebuttable.

## ADMINISTRATIVE PROCEEDINGS

On July 19, 1972 Plaintiff filed an Application for benefits under the Federal Coal Mine Health and Safety Act of 1969. (Tr. 38–41). Plaintiff's application was denied initially on August 1, 1973 (Tr. 42–44), and upon reconsideration on January 10, 1974 (Tr. 46–48). On January 23, 1974 Plaintiff requested a hearing, and on August 16, 1974, the administrative law judge before whom the hearing was conducted, after de novo consideration of the case, determined that Plaintiff was not entitled to benefits (Tr. 21, 5–11). The administrative law judge's decision became the final decision of the Secretary of Health, Education and Welfare on September 30, 1974 when the Appeals Council approved it (Tr. 3). Plaintiff then filed this action under 30 U.S.C. § 923(b).

## REVIEW STANDARDS

■■■ 30 U.S.C. § 923 incorporates 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g) the Secretary's decision must be affirmed if it is supported by substantial evidence. Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In conducting a review under 42 U.S.C. § 405(g) this Court is required to examine the facts contained in the administrative record, evaluate the conflicts, and make a determination therefrom whether the facts support the several elements which make up the ulti-

mate administrative decision. *Nickol v. United States*, 501 F.2d 1389 (Tenth Cir. 1974); *Heber Valley Milk Company v. Butz*, 503 F.2d 96 (Tenth Cir. 1974). Under the abovementioned regulations it appears that only medical evidence may be considered in determining whether Plaintiff has established totally disabling pneumoconiosis. However, evidence of duration of service in coal mines is relevant in determining which presumptions are applicable to a given case and evidence of Plaintiff's current ability to perform work is relevant in rebutting presumptions. The findings of the administrative law judge make up the ultimate administrative decision herein. Insofar as they are relevant these findings are as follows:

"Claimant worked at least 10 years in underground coal mine employment.

The evidence does not establish that claimant had pneumoconiosis or a totally disabling chronic respiratory or pulmonary disease presumed to be pneumoconiosis at any time through June 30, 1973.

Claimant's pulmonary function values in June 1973, exceeded the interim criteria and did not demonstrate significantly impaired lung function.

Although claimant had chronic bronchitis and emphysema, such was not medically demonstrable as severe through June 30, 1973."

### MEDICAL EVIDENCE

The following medical evidence is contained in this record. A report from Dr. Carlton E. Smith dated July 19, 1972, states that an X-ray of even date showed hilar shadows prominate and fibrosis of the lungs (Tr. 54).

On June 20, 1973 Plaintiff was examined by Dr. Richard H. Reid. On this examination Plaintiff appeared to be emphysematous with a bronchitic-type cough and the use of accessory muscles of respiration. HEEN&T was negative. Examination of the chest revealed prolonged expiratory phase with diffuse wheezing on forced expiration. His pulmonic component of his 2nd sound was definitely accentuated. His chest film was unremarkable. Pulmonary function study revealed a vital capacity of 2.95 liters. $FEV_1$ and 2.7, MBC was 94. In summation Dr. Reid noted that clinical findings suggested chronic bronchitis and emphysema, but that pulmonary function tests showed normal pulmonary functions. Dr. Reid concluded that there was minimal disability. (Tr. 56–57).

On June 4, 1974 the Plaintiff was examined by Dr. Kenneth Miller. Physical examination showed Plaintiff's chest to be clear to percussion, good breath sounds throughout except for a few inspiratory rales in both bases laterally, clearing somewhat with deep breathing. Chest X-ray showed no active pulmonary disease. Pulmonary function study showed: weight 192½ pounds; height 5' 6½"; before bronchodilators total vital capacity 2.6 liters; FEV one second 2.3 liters; maximum breathing capacity 52 liters per minute; after bronchodilators total vital capacity 2.4 liters; FEV one second 2.0 liters; maximum breathing capacity 55 liters per minute. From his examination Dr. Miller concluded that Plaintiff exhibits evidence of moderate restrictive lung disease and impaired pulmonary reserve, *probably* on the basis of chronic bronchitis and pneumoconiosis. Dr. Miller further stated that plaintiff would not be able to perform gainful work with this degree of pulmonary impairment.

Evidence concerning Plaintiff's duration of service in coal mines is as follows: Fellow coal miners certify that Plaintiff worked in coal mining from 1933–1944 (Tr. 51), from 1929–1931 (Tr. 52), and from 1925–1928 (Tr. 53).

At his hearing Plaintiff testified that these periods of employment were nearly consecutive but that they were sometimes broken by lay offs. Plaintiff contends that he had worked in coal mines a period of 14 years. (Tr. 29).

With regard to Plaintiff's present ability to engage in gainful activity, Plaintiff retired from a plate glass company in 1969. (Tr. 30). Plaintiff testified that prior to his retirement he was in poor condition, that he had to take a lesser job to be able to stay on until retirement age (Tr. 31). He testified that he had had a breathing problem when he retired, that it has become progressively worse and that he is currently unable to do anything (Tr. 31–33).

## CONCLUSION

 The first of the Secretary's findings of fact which should be considered is his conclusion that Plaintiff worked in coal mines more than ten but less than fourteen years (Tr. 8, 10). This fact is relevant to the determination as to which of the statutory presumptions should be applied in this case. The corroborative statements of Plaintiff's co-workers are not specific as to the number of months worked in a given year. Their statements could be taken to describe a period as many as sixteen years or a period of as small as ten years six months. Therefore, these statements are inclusive as to the period worked. In Plaintiff's application for benefits he stated that he had been employed in coal mines for a period of fifteen (15) years (Tr. 38). At his hearing, upon questioning from the hearing examiner Plaintiff stated that there were occasional breaks in his periods of employment during the time he was coal mining. He further admitted that he had worked approximately fourteen years total counting these interruptions in employment (Tr. 28–29). Therefore, the decision that Plaintiff worked in coal mines for more than ten years but less than fifteen years is supported by substantial evidence. The burden is on the Plaintiff to prove his period of employment.

The second question presented is whether Plaintiff has established totally disabling pneumoconiosis under the applicable regulations in applying the ten year presumptions. Plaintiff contends that he has met the interim standards for establishing pneumoconiosis. Plaintiff quotes from an alleged Department of Health, Education and Welfare Bulletin in making this assertion. Said bulletin is not in evidence before the Court as a delineation of the Department's regulations nor does it appear to be directly quoted from any part to the Department's regulations as promulgated in the Code of Federal Regulations. Therefore, this material will be ignored by the Court.

 Under the interim regulations, 20 C.F.R. § 410.490(b)(1)(i), a miner will be presumed to be totally disabled due to pneumoconiosis if a chest X-ray, biopsy, or autopsy establishes pneumoconiosis per 20 C.F.R. § 410.428. Under 20 C.F.R. § 410.428(a)(1) a chest X-ray may establish the existence of pneumoconiosis under certain established medical classifications. The evidence reveals that Plaintiff has had three chest X-rays. None of these X-rays show pneumoconiosis within the established standards. As Plaintiff has ten years of coal mining experience he would be, under 20 C.F.R. § 410.490(b)(3) entitled to establish a disability under the provisions of 20 C.F.R. § 410.490(b)(1)(ii). Under the table of values described in 20 C.F.R. § 410.490(b)(1)(ii) Plaintiff, being 5′ 6″ (66″), is required to show $FEV_1$=2.3 or less and MVV=92 or less. Dr. Reid's examination showed Plaintiff's $FEV_1$=MBC=94. Dr. Miller's examination revealed before bronchodilators FEV one second = 2.3 and MBC = 52, after bronchodilators FEV one second 2.0, MBC=54. There is a clear conflict in the evidence here. Under Dr. Reid's examination Plaintiff failed to meet the specifications. Under Dr. Miller's examination Plaintiff qualified. However, in this conflict there is substantial evidence to support the Secretary's determination that Plaintiff did

not establish a presumption of pneumoconiosis under the interim standards.

■ Plaintiff is also entitled to establish disability under the standards set out in 20 C.F.R. §§ 410.412–410.462. In order to establish entitlements to benefits under this section Plaintiff must establish, among other things that he is totally disabled due to pneumoconiosis. 20 C.F.R. § 410.410(b). This obviously entails an establishment of the existence of the disease. Under 20 C.F.R. § 410.-414 a finding of the existence of pneumoconiosis may be made under the provisions of 20 C.F.R. § 410.428. As has been previously established, Plaintiff has failed to establish the existence of pneumoconiosis under this section. Alternatively, under 20 C.F.R. § 410.-414(b)(4) a miner with many years of service, but less than fifteen, may be presumed to have pneumoconiosis upon making a showing of a severe lung impairment. This finding is discretionary and it cannot be said, in view of the conflicting evidence, that the Secretary has abused his discretion thereunder. Therefore, under the applicable regulations Plaintiff has failed to establish the existence of pneumoconiosis.

Under 20 C.F.R. § 410.418 a miner is irrebuttably presumed to be totally disabled due to pneumoconiosis if he is suffering a chronic dust disease of the lung which when diagnosed by chest X-ray yields one or more large opacities which would meet certain medical specifications. Plaintiff's chest X-rays show no such opacities. The other criteria of this section are not applicable to this case.

In view of the foregoing the Court finds and concludes that the Secretary's decision that the evidence does not establish that claimant had pneumoconiosis or a totally disabling chronic respiratory or pulmonary disease at any time through June 30, 1973 is supported by substantial evidence and should therefore be affirmed.

A judgment based on the foregoing will be entered this date.